IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BUILDERS MUTUAL INSURANCE )
COMPANY, )
                                                               )
    Plaintiff, )
                                                               )
    v. )       Civil Action No. 1:18-cv-01512
                                                               )              (RDA/TCB)
WEDGE CONSTRUCTION, )
INCORPORATED, ROBERT S. VOSS, )
and MARTHA CRANE, )
                                                               )
    Defendants. )

**<u>Order</u>**

This matter comes before the Court on Plaintiff's Motion for Summary Judgment. Dkt. 25. Plaintiff contends that Defendant's delayed notification constituted a breach of a condition precedent to coverage under an insurance policy. Considering the Complaint, Answers, Motion for Summary Judgment, Opposition to Motion for Summary Judgment, Reply to Opposition to Motion for Summary Judgment, relevant exhibits, and argument on September 6, 2019, this Court GRANTS the Motion for Summary Judgment for the reasons stated below. Dkts. 1, 13, 14, 25, 27, 28, and 30.

A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate . . . only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law." *Nationwide Mut. Fire Ins. Co. v. Overstreet*, 568 F.Supp.2d 638, 643 (E.D. Va. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[T]o defeat summary

judgment[,] the non-moving party may not rest upon a 'mere scintilla' of evidence, but must set forth specific facts showing a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 324). "The interpretation and construction of insurance policies is a matter of law, and therefore, such cases are particularly amendable to summary judgment." *Lessard v. Continental Cas. Co.*, No. 1:14-cv-63, 2014 WL 4162006, *2 (E.D. Va. Aug. 19, 2014).

## B. Background

On September 27, 2014, Mr. Voss and Ms. Crane ("Vosses") contracted with Wedge Construction, Inc. ("Wedge Construction"),[1] to perform renovations on a residence they share in Manassas, Virginia ("construction contract"). Wedge Construction entered into a contract for commercial insurance ("insurance policy") with Builders Mutual Insurance Company ("Builders Mutual") on June 17, 2015. Dkt. 1, Ex. #2.

On November 21, 2016, Wedge Construction became aware of electronic mail sent by Attorney Stephen West on November 18, 2016. Dkt. 25, Exs. #3. In that electronic mail, West advised that the Vosses retained him as counsel "with regard to certain claims [the] Voss[es] ha[d] against [Wedge Construction]." West specified that

> [t]hese claims concern the manner in which Wedge [Construction] performed its contractual duties under the [construction contract] calling for the completion of certain specified construction work by Wedge [Construction] at and upon [the] Voss[es]' primary residence located at 12255 Rustic Wood Court, Manassas, Virginia 2011. Under the law, Wedge [Construction's] performance was required to be in substantial conformance with the terms and conditions set forth in the [construction contract] (both expressed and implied) and as otherwise required by customary practices and standards established by the residential construction trade/industry.

---

[1] References to Wedge Construction collectively refer to both Wedge Construction and Anthony Benita, Wedge Construction's President.

2

West also articulated the Vosses' position that Wedge Construction's "contractual performance [pursuant to the construction contract] failed to meet those performance requirements." West further explained that the claims

> are grounded upon Wedge [Construction's] breach of its contractual duties under the [construction contract], as well as [Wedge Construction's] negligent performance of various elements of the original and modified as specified by the applicable contract documents.

Moreover, West advised that he was "reviewing the pertinent facts and related legal principles" and noted that "[a] more definitive statement of [the] Voss[es]' grounds of entitlement to and corresponding damages will be forthcoming." The electronic mail concluded with a request that Wedge Construction preserve related evidence.

That day, Wedge Construction responded by electronic mail. Dkt. 25, Ex. # 4. Wedge Construction noted that it had "yet to pursue a very large outstanding final payment" of over $21,000 allegedly owed by the Vosses. Dkt. 30. In response to the Vosses' retained counsel's demand, Wedge Construction responded that it would spend additional time and expense in pursuit of its own claim. Wedge Construction also intimated that it would ensure that all outstanding debts are accounted for in anticipation of what may end up being either a "Primary or Counter Suit." Wedge Construction expressed the hope that the parties could "come to a mutually amicable conclusion [to] avoid the long and expensive litigation process." Wedge Construction also requested the preservation of related evidence.

Communications between Wedge Construction and the Vosses ceased and work pursuant to the construction contract halted.

On March 14, 2018, West sent a demand package to Wedge Construction, itemizing over $100,000 in damages sought. Wedge Construction delivered a copy of the demand package to

3

an individual at Danaker/Skewes & Associates, Inc., Wedge Construction's agent who had sold it the insurance policy in question. On March 29, 2018, that agent forwarded the demand package to Builders Mutual.

Builders Mutual filed a Complaint for declaratory judgment requesting that this Court determine its obligations under the insurance policy, Dkt. 1, and subsequently moved for summary judgment. Dkt. 25.

## C. Analysis

"Because the law of the state where an insurance contract is written and delivered controls as to issues of coverage, Virginia law governs questions of coverage in this dispute." *Vermont Mut. Ins. Co. v. Everette*, 875 F. Supp. 1181, 1187 (E.D. Va. Feb. 9, 1995) (citing *Buchanan v. Doe*, 246 Va. 67, 70, 431 S.E.2d 289, 291 (1993)). In Virginia, an insurance policy constitutes a contract to which rules of contract interpretation apply. *Nationwide Mut. Fire Ins. Co. v. Overstreet*, 568 F.Supp.2d 638, 643 (E.D. Va. 2008) (citing *Harleysville Mut. Ins. Co. v. Dollins*, 201 Va. 73, 109 S.E.2d 405, 409 (1959)). If the language of the insurance policy is unambiguous, terms are afforded their plain and ordinary meaning. *Penn-America Ins. Co. v. Mapp*, 461 F.Supp.2d 442, 449 (E.D. Va. 2006) (citing *Transcontinental Ins. Co. v. RBMW, Inc.*, 262 Va. 502, 512, 551 S.E.2d 313, 318 (2001)).

In the instant matter, the insurance policy directs that, in the event of an "'occurrence,' offense, claim or suit:"

> a. [Wedge Construction] must see to it that we are *notified as soon as practicable of an "occurrence" or an offense which may result in a claim*. To the extent possible, notice should include:
> (1) How, when and where the "occurrence" or offense took place;
> (2) The names and addresses of any injured persons and witnesses; and
> (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

4

>    b. If a claim is made or "suit" is brought against any insured, [Wedge Construction] must:
>> (1) Immediately record the specifics of the claim or "suit" and the date received; and
>> (2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
>    c. [Wedge Construction] and any other involved insured must:
>> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>> (2) Authorize us to obtain records and other information;
>> (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>> (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

Dkt. 1, Ex. #2, p. 69 (emphasis added).

"Occurrence" is defined in the insurance policy to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. 1, Ex. #2, p. 73.

It is well-settled in Virginia that "provisions 'requiring that written notice of an accident be given 'as soon as practicable' or 'immediately' are reasonable and enforceable." *Overstreet*, 568 F.Supp.2d at 643 (quoting *State Farm Mut. Auto. Ins. Co. v. Douglas*, 207 Va 265, 267, 148 S.E.2d 775, 777 (1966)). The underlying rationale is that

> the insurer is [otherwise] at the mercy of its insured's willingness to reveal such potential claims. [N]otice provisions are designed to afford the insurer the opportunity to make a timely investigation of all circumstances surrounding the accident and to prepare an adequate defense if necessary on behalf of the insured.

*Atlas Ins. Co. v. Chapman*, 888 F.Supp. 742, 745 (E.D. Va. 1995) (citing *North River Ins. Co. v. Gourdine*, 205 Va. 57, 62, 135 S.E.2d 120, 123 (1954)).

Although the question of whether the insured furnished notice "'as soon as practicable' is [generally] one for the fact-finder to determine, [] *State Farm Mut. Auto. Ins. Co. v. Porter*, 221

5

Va. 592, 597 (1980), it 'may be decided as a matter of law where reasonable men could not differ as to the inferences to be drawn from the undisputed facts,' [] *Atlas Ins. Co.*, 888 F.Supp. [at] 745." *Lessard*, 2014 WL 4162006 at *5. It is this question which gives the Court the greatest pause.

In Virginia, delay in providing notice constitutes a breach of contract when "the failure [is deemed] substantial and material." *Penn-America Ins. Co.*, 461 F.Supp.2d at 452 (citing *Porter*, 221 Va. 592, 597, 272 S.E.2d 196, 199 (1980)). To determine whether "[t]he failure is substantial and material," the Court applies a three-factor test, evaluating the reasonableness of the delay, the duration of the delay, and whether the insurer suffered prejudice. *Id.* (citing *North River Ins. Co. v. Gourdine*, 205 Va. 57, 135 S.E.2d 120, 124 (1964)).

With respect to the reasonableness factor,

> [t]he interpretation of policy language. . .demands [objectivity]. Failure to give timely notice will not be excused when the insured only subjectively concludes that coverage under the policy will not be implicated. *Such a policy provision requires the insurer to be notified whenever, from an objective standpoint, it should reasonably appear to the insured that the policy may be involved.*

*Dan River Inc. v. Commercial Union Ins. Co.*, 227 Va. 485, 489, 317 S.E.2d 485, 489 (1984) (citing *American Home Assurance Co. v. American Employers Ins. Co.*, 384 F.Supp. 3, 6 (E.D. Pa. 1974)) (emphasis added).

With respect to the duration of the delay, "a prolonged delay in notification alone may breach the policy even absent a showing of prejudice." *Penn-America Ins. Co.*, 461 F.Supp.2d at 452 (citing *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 504, 423 S.E.2d 188, 192 (1992)).

6

Wedge Construction contends that it complied with the notice requirements and that there are genuine disputes of material fact regarding when its duty to notify Builders' Mutual was triggered. Dkts. 27 and 30.

The governing language of the notice provision obligates Wedge Construction to notify Builders Mutual "as soon as practicable of an 'occurrence' or an offense which may result in a claim" and "as soon as practicable" if "a claim is made or a 'suit' is brought." It is unambiguous that Wedge Construction's obligation is broader than providing notice in the immediate event that a claim or suit is initiated. Wedge Construction's duty is also triggered by "an 'occurrence' or an offense which *may result* in a claim." (emphasis added). Thus, this Court must consider whether notice was provided to Builders Mutual "as soon as practicable."

The Court finds that reasonable men could not differ as to the inferences drawn from the undisputed facts. Accordingly, whether Wedge Construction provided notice "as soon as practicable," as a matter of law, is a question this Court may resolve in the context of summary judgment.

Wedge Construction does not dispute that it accessed West's electronic mail on November 21, 2016, nor does Wedge Construction dispute the literal contents of that electronic mail. West's electronic mail notified Wedge Construction that counsel was retained for claims the Vosses had against Wedge Construction. The bases of the claims were specified: West described that the claims concerned the "manner in which Wedge Construction performed the construction contract," "negligent performance" of the construction contract, and breach of the construction contract. West informed Wedge Construction that additional steps were being undertaken to prepare a document containing the Vosses' "grounds of entitlement" and "corresponding damages." Through Wedge Construction's same-day, electronic mail reply, it is

7

clear that Wedge Construction must have appreciated that litigation could result as of November 21, 2016, because Wedge Construction itself responded that it would "spend additional time and expense. . . in anticipation of what may end up being either a Primary or Counter Suit." Considering the language of West's electronic mail objectively, a reasonable person would understand that, at the very least, the insurance policy could be implicated.

Wedge Construction attempts to justify its delayed notification. In his deposition, Anthony Benita, Wedge Construction's President, dismissed West's electronic mail as "just a request to hold information, not notice of a pending suit." Dkt. 25, Ex. #5. When asked why Benita did not notify Builders Mutual upon receipt of West's electronic mail, Benita explained that he "didn't feel like there was a lawsuit pending," but believed that the issues presented pertained to accounting issues and a punch list. At oral argument, it was contended that, from the standpoint of a "reasonable builder," that either the Vosses abandoned their claims by not following up and/or that Wedge Construction elected not to pursue the outstanding debt owed by the Vosses, thereby resolving any perceived dispute. Dkt. 30. Wedge Construction's explanations for the delay in notification amount to subjective conclusions that the insurance policy would not be implicated. As a matter of law, subjective conclusions regarding whether or not the insurance policy would be implicated do not excuse the delay. *See, e.g.*, *Mount Vernon Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 224 F.Supp. 666 (E.D. Va. 1963) (noting that an approximately 10-month delay was not justified due to the insured's belief the parties settled the dispute), and *Lessard*, 2014 WL 4162006 (citing *Liberty Mut. Ins. Co. v. Safeco Ins. Co.*, 223 Va. 317, 324 (1982) (holding that a 51-day delay in notifying the insurer was not 'as soon as practicable' because there was no evidence that the insured 'was prevented by reason of health, or other circumstance, from personally notifying [the insurer] seasonably, or from having

8

someone notify the company for him promptly"). Moreover, there was no evidence that the insured was prevented by reason of health, or other circumstance, from personally notifying the insurer seasonably, or from having someone notify Builders Mutual promptly. Accordingly, the delay was unjustified.

Further, the duration of the delay was significant. Wedge Construction did not provide notice to Builders Mutual until March 29, 2018, more than fifteen months after West's electronic mail was accessed. *See, e.g., Aetna Cas. and Sur. Co. v. Jett*, 1995 WL 238565, No. 94-1597, *1-2 (4th Cir. 1995) (finding that a delay in notification of more than two years was a substantial and material breach of the insurance policy), and *Atlas Ins. Co.*, 888 F.Supp. at 746 (finding that a four-month delay was a substantial and material breach of the insurance policy).

Because the delay was unreasonable, unjustified, and of a significant duration, the delay was both substantial and material and constituted a breach of the notice provisions of the insurance policy.

Furthermore, in Virginia, notice provisions of this kind constitute a "condition precedent to recovery." *Penn-America Ins. Co.*, 461 F.Supp.2d at 452 (citing *Atlas Ins. Co.*, 888 F.Supp. at 745). Thus, Wedge Construction is not entitled to coverage under the insurance policy.

Accordingly, this Motion for Summary Judgment is GRANTED.

The matter was well-argued by all counsel involved.

September 13, 2019
Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge